## DOOLEY v. SEVENTEEN THOUSAND FIVE HUNDRED HEAD OF SHEEP.

### No. 19,298; February 28, 1894.

#### 35 Pac. 1011.

**Animals.—Where a Trespass is Committed by the Animals** of several persons, those of one person cannot be sold to pay the damages caused by animals of others, he not having any control over them, and not having contributed to the cause of their trespassing, and no authority for such sale being given by act of March 7, 1878, concerning trespassing of animals.[1]

**Animals—Trespass by.—A Finding That 7,000 Sheep,** marked with certain brands, trod down and depastured all of plaintiff's lands, being 9,460 acres, comprising ten whole and twenty fractional sections, is not supported by evidence only that they were seen on five different days and on three sections of the land; there being evidence that other sheep were seen on the lands, and it not being shown that 7,000 other sheep did not trespass on the lands as alleged in the complaint.

APPEAL from Superior Court, San Luis Obispo County; V. A. Gregg, Judge.

Action by Hiram A. Dooley against 17,500 head of sheep. Judgment for plaintiff. Gracian Solaberry appeals. Reversed.

Alvin Fay and Wilcoxon & Bouldin for appellant; Ruffin & Ruffin, Graves & Graves and L. Lamy for respondent.

VANCLIEF, C.—This action in rem was brought to recover $7,500 damages, alleged to have been suffered by plaintiff in consequence of trespasses of the defendant sheep upon 9,460 acres of unInclosed lands of the plaintiff, situate in the county of San Luis Obispo; and is based upon an "Act concerning trespassing of animals upon private land in certain counties," approved March 7, 1878 (Stats. 1878, p. 176). It is alleged

---

[1] Cited and followed in Pacific Livestock Co. v. Murray, 45 Or. 109, 76 Pac. 1080, where it was said the defendant might show that other stock, including the plaintiff's, grazed on the land, the court adding, "He is liable only for the mischief done by his sheep, and not for that done by animals belonging to other parties."

in the complaint that the defendant sheep are marked or branded as follows: 3,500 of them, J H; 3,500, J O; 3,500, A A; 3,500 P; and 3,500, △ ; and that the owners of the defendant sheep are unknown to plaintiff. The trespasses are alleged to have been committed at divers times between December 1, 1892, and March 6, 1893.

The action was commenced March 13, 1893, and on the same day a writ of attachment was issued to the sheriff of Kern county (which is not one of the counties to which the act applies), commanding that sheriff to attach all the sheep above described, "or so much thereof as may be sufficient to satisfy the plaintiff's demand as above mentioned," unless the owners give security, etc. A summons directed to the defendant animals was also issued, and served by posting a copy thereof on the courthouse door from March 13th until March 24th. On March 24th the sheriff of Kern county attached 3,000 of the defendant sheep, 1,500 of which were marked J O, and 1,500 marked △, by seizing them and placing them in the hands of a keeper. On March 29, 1893, the owner of the sheep attached appeared by attorney and demurred to the complaint; and, the demurrer being overruled, the defendant answered, denying all the material averments of the complaint. The court found the alleged trespasses to have been committed by the following sheep: "About 2,500 sheep branded A A, and about 2,000 head of sheep branded J O, and about 2,500 sheep branded △ (triangle), by treading down and depasturing all of said lands, and the grass and herbage thereon growing. That the value of said grass and herbage so destroyed was and is twenty cents per acre for each and every acre of said land, and the plaintiff was thereby damaged by the said destruction of said grass and herbage in said sum of $1,892." And also found that Gracian Solaberry was the owner of about 2,000 of the sheep branded J O, and about 2,500 of those branded △ (triangle), including the 3,000 attached by the sheriff of Kern county. At the close of the evidence, upon motion of plaintiff, the action was dismissed as against the 3,500 sheep branded P, and the 3,500 branded J H. It was thereupon "ordered and adjudged that there is due the plaintiff, as found by the court, the sum of $1,892 damages, and costs of suit," and "further ordered and adjudged that the defendant sheep levied on and held in at-

tachment in this case, to wit, about 1,500 head branded J O, and about 1,500 head branded △ (triangle), be sold according to law, in the usual course of sales of property under execution; that the proceeds of sale be applied to the payment of the expenses of sale and the amount due the plaintiff, with his costs and accruing interest; and, if any surplus remains after said payments, the same to be paid to Gracian Solaberry, the owner of said brands of sheep. If said sales do not produce enough to satisfy the amount due plaintiff, that then those certain sheep defendants, about 2,500 head (owner unknown), branded A A, be sold to pay the balance due plaintiff, and expenses of sale. If any surplus arises upon said last sale, the same shall be paid into court for the unknown owner of said sheep branded A A.'' From this judgment, and from an order denying his motion for a new trial, Gracian Solaberry appeals.

1. On the appeal from the judgment, it is contended by appellant that the findings of fact do not warrant the conclusions of law nor support the judgment. It is found as a fact that the trespasses, for which damages in the sum of $1,892 are found to have been suffered by plaintiff, were committed by 4,500 sheep, the property of appellant, Solaberry, and 2,500 sheep marked A A, of which Solaberry was not the owner, and whose owner was unknown, and of which the court had acquired no jurisdiction by attachment or distraint; yet the judgment is that the 3,000 of Solaberry's sheep which were attached be sold, and that the proceeds of such sale be applied to the payment of all the damages and costs, if sufficient to pay all. I think this was not warranted by the facts found. The act of the legislature under which this action is prosecuted, however unique in some respects, does not expressly, nor by necessary implication, authorize the taking or sale of one man's animals to pay the damages caused by trespasses of animals owned by others, over which animals he had no control. It does not appear that Solaberry had any control of the sheep marked A A, nor that in any way or degree he contributed to the cause of their trespassing upon plaintiff's land. Therefore Solaberry was only severally liable for the damages caused by his sheep, and such damages should have been distinctly found.

31

2. Appellant contends that the evidence is insufficient to justify the finding that the damage caused by the trespasses of 2,500 sheep branded A A, 2,000 branded J O, and 2,500 branded △, "was 20 cents per acre for each and every acre" of the land described in the complaint (9,460 acres), or the finding that plaintiff was thereby damaged in the sum of $1,892 by the trespasses of the sheep last above mentioned. I think this point well taken. None of these sheep were seen on any part of plaintiff's lands, except on five different days, and only in three different sections of it; and no two of the bands differently branded were ever seen together on said land. Plaintiff testified that he first saw about 2,500 of the sheep branded A A on section 18, February 16, 1893, and on the same day saw about 2,500 branded J O on section 12. About five days thereafter he saw about 2,500 of the triangle band on section 12; and that these were all the times he saw the sheep on his land. Swain testified that on January 22d or 23d he saw about 2,000 sheep, branded J O, on section 18, and on March 3d saw about 2,500, branded △, on section 34. Abbott testified that on March 3d or 4th he saw the triangle sheep on plaintiff's land, but did not know what section they were on; about the same time he saw two or three other bands of 2,000 to 2,500 each, but did not see the brands of these. The sheep he saw at different times were three miles apart. On March 3d, Morris saw about 2,000 triangle brand on the land near the line of Kern county, in care of a herder, who drove them across the line into Kern county. The evidence as to damage consisted of the testimony of the witnesses above named, who testified as experts as to the damage done to the pasturage on the whole of plaintiff's land, without regard to the animals by which the damage had been caused, except as above stated. They rode over and examined all the land, between the first and tenth days of March, 1893, and testified that all the grass and herbage had been eaten, and the land trodden, apparently by sheep, in consequence of which they estimated the damage at twenty cents per acre of all the land; but there was no evidence, except that above stated, that the damage was caused by appellant's sheep, or by the sheep branded A A. On the contrary, other bands of sheep had been seen on the lands by some of the same witnesses. Plaintiff's land (9,460 acres) is composed of ten whole sections and

about twenty subdivisions of other sections, all situate in townships 31 and 32, and amounts to nearly fifteen sections, which, if located in a square form, would be nearly four miles square; but they are not so located, and the descriptions given in the complaint show that in some directions they must extend at least six miles.

It is alleged in the complaint that the damage was done by five different bands of ·sheep, two of which were branded, respectively, J H and P; and there is nothing in the evidence tending to prove that these two bands of 3,500 each did not trespass upon plaintiff's lands at the times and in the manner alleged. The evidence that appellant's sheep and the A A sheep were seen on small portions of the land, on four or five different days, is perfectly consistent with this allegation of the complaint, and is obviously insufficient to justify the finding that appellant's sheep and the sheep branded A A damaged "each and every acre" of plaintiff's lands to the extent of twenty cents, even though each and every acre had been so damaged by sheep. I think the order and judgment should be reversed and the cause remanded for a new trial.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion, it is ordered that the judgment and order appealed from be reversed and the cause remanded for a new trial.