Olive Laudeman, Appellee, v. Lester E. Beyler, Appellant.
Lester E. Beyler, Counterclaimant, v. Olive Laudeman, et al., Counterdefendants.

Gen. No. 9,442.

Opinion filed October 26, 1944. Released for publication November 21, 1944.

HAROLD H. KUHFUSS, of Pekin, for appellant.

HARRY B. HOFFMAN, of Peoria, for appellees.

MR. JUSTICE HAYES delivered the opinion of the court.

Lester E. Beyler has operated a dry cleaning business in the city of Delavan under the name of "Delavan Cleaners" since May 17, 1933. At the beginning, Beyler had no equipment except a car and a counter which he maintained in a rented building. In the Fall of 1933, Beyler's sister moved to Delavan and started to work in his cleaning business at an agreed wage of three dollars per week, in addition to

her board, room and clothing. She never actually received these wages however, but, with her consent, they were retained by her brother in the business as an investment. On May 21, 1934, Beyler purchased a building for his business and the cleaning equipment located therein, for $2,500. Since that time repairs and equipment valued at $1,880 have been added. This entire capital outlay was made by Beyler out of his own funds. In July 1934, Beyler raised his sister's wages to five dollars per week but again it was agreed that they would be invested in the business. On September 20, 1939 the brother and sister entered into a written partnership agreement and the business was operated under that agreement until May 17, 1941.

In late 1935 Elmer Laudeman came to Delavan and spent much time in the company of Beyler's sister in the cleaning establishment and on the route where she drove the truck to pick up items to be cleaned. Finally on December 1, 1940 Beyler and Laudeman had a disagreement and the latter was ordered from the premises. On December 13, 1940 Laudeman opened a rival dry cleaning establishment under the name of "Delavan Dry Cleaning Company." Shortly thereafter Beyler's sister decided to leave the partnership and asked a settlement which she never was able to obtain. She and Beyler finally parted on May 17, 1941 and immediately thereafter she was employed by Laudeman in his business. On August 17, 1941 she and Laudeman were married.

On February 3, 1942 Mrs. Laudeman filed her complaint in the circuit court of Tazewell county, Illinois, against her brother asking for an accounting, and that a receiver be appointed for the "Delavan Cleaners" to wind up its business. Beyler filed an answer and also a counterclaim against Mrs. Laudeman and her husband asking for damages from the former for breach of the partnership contract, and from both Mr. and Mrs. Laudeman for unfair competition. In

addition, an injunction was prayed to restrain the Laudemans from unfair business practices.

Testimony in this cause was taken before the Master in Chancery who found that the total assets of the partnership on the date of its termination amounted to $3,206 and the total bills payable $602, all of which were subsequently paid by Beyler from his own funds. He found further that under the provisions of the partnership agreement Mrs. Laudeman and Beyler were each entitled to one half of the assets but he refused to credit Beyler with the bills paid by him. The Master also found that Mrs. Laudeman was not liable in damages for breach of the partnership contract, but that the Laudemans had been guilty of unfair competition and illegal business practices and recommended an injunction against them. Finally he found that there was insufficient evidence to authorize an award of anything but nominal damages against Elmer Laudeman for unfair competition. At the hearing upon the exceptions to the Master's report the circuit court allowed Beyler credit for the partnership debts paid by him but otherwise approved the Master's report and entered a decree thereon. Beyler has appealed to this court.

Beyler contends first, that the trial court erred in decreeing that Olive Laudeman is entitled to a one-half interest in the partnership assets without regard to the amount of capital invested by each of the partners. Paragraph two of the partnership agreement signed by Beyler and his sister provides as follows: "That the ownership of said partners respectively in said partnership shall be as follows: each shall own an undivided one-half (½) of the entire properties owned or hereafter acquired by them or either of them in connection with the operation of said business and their respective investments in said business shall be each an equal undivided one-half (½) thereof, and all properties

now in the hands of either or both of them which have heretofore been used in connection with a cleaning business in the city of Delavan shall be considered as hereafter belonging to this partnership." The language of this paragraph leaves no doubt as to the intention of the parties and is not open to construction. We think it was correctly interpreted by the trial court.

Beyler next contends that the trial court erred in failing to award damages against Mrs. Laudeman for breach of her fiduciary duties as a partner as prayed in his counterclaim. Basically he contends that Mrs. Laudeman breached paragraph 3 of the partnership agreement, and in addition conspired with Elmer Laudeman to destroy the partnership business. Paragraph 3 of the agreement provided as follows: "That this partnership shall exist continuously until terminated either by the death of a partner or by an agreement of the partners; and if the partners shall be unable to agree on a dissolution, the matter shall then be brought before the county court of Tazewell county, Illinois." The Master in Chancery found that this paragraph, in effect, provided that the partnership should continue indefinitely, unless terminated by death or agreement of the parties, and that the last clause attempting to confer jurisdiction on the county court of Tazewell county to settle any disagreement is void. We believe this finding to be correct. Parties cannot confer jurisdiction on a county court to hear matters not provided there by law. *Leman v. Sherman*, 117 Ill. 657. Because this final clause is insufficient, the agreement is silent as to the consequences of a disagreement between the partners. Under these circumstances, we believe that section 31 of the Partnership Act is applicable and that a dissolution as a matter of law occurred when Mrs. Laudeman left the business on May 17, 1941. Ill. Rev. Stat. 1943, ch. 106½, par. 31 [Jones Ill. Stats. Ann. 97.31]; *Thanos v. Thanos*, 313

Ill. 499, 145 N. E. 250. She therefore was not guilty of any breach subjecting her to liability for damages by acts in this regard, nor do we believe that the Master's failure to assess damages against Mrs. Laudeman for conspiracy to destroy the plaintiff's business was unjustified. While it is true that plaintiff has established facts showing that Elmer Laudeman had ample opportunity to obtain the names of plaintiff's customers and to observe his methods of conducting his business, there is no proof that Laudeman was induced to do so by his future wife or that there was any sinister plan to obtain Beyler's trade secrets, nor is there any proof that Mrs. Laudeman communicated confidential business information to Mr. Laudeman during the existence of the partnership. In fact she testified that she did not.

The most difficult question before us is the validity of the order of the trial court awarding plaintiff only nominal damages against Elmer Laudeman for unfair competition occurring after his establishment of a rival business. The Master in Chancery found, ''that no evidence was offered or introduced before me as to the profits which the said counterdefendant, Elmer Laudeman, made by reason of his said unfair competition . . . or in the loss of profits or other legal damages which the said defendant, Lester E. Beyler, sustained by reason of said conduct . . . and that by reason of the failure of the defendant, Lester E. Beyler, to prove any legal damages by him sustained or profits received by the said counterdefendant, Elmer Laudeman, I thereby find that the said defendant, Lester E. Beyler, has sustained only nominal damages. . . .''

An examination of the record discloses that the fact of damage was established. Mrs. Laudeman testified that during the existence of the partnership, the plaintiffs operated the business at a profit. Lester E. Beyler testified that after Laudeman started his competing

business, "it caused my gross receipts to go down. It cut my route business about 50 per cent. On the average the year through that would be between $25.00 and $30.00 a week. The 50 per cent reduction would be $25.00 to $30.00 per week."

Thus the only question is whether the above-quoted testimony was sufficient proof of the act of defendants to support an award. It has been stated that, "it is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from proximate estimates of witnesses, a satisfactory conclusion can be reached." *Brown v. McCloud*, 96 Ore. 549, 190 Pac. 578. On the other hand, the damages awarded must approximate the net profits that would have accrued had not the unfair competition occurred. *L. P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.*, 20 F. (2d) 830. In the present record the only evidence offered by plaintiff on the subject was an estimate of the reduction in gross receipts suffered by him. While it is not our intention to formulate a precise rule, it seems clear that plaintiff here could have furnished proof of the percentage of his gross receipts that normally represented profit as well as the names and number of his established customers who were enticed away by the unfair competition of the Laudemans. This type of proof was held sufficient in *Bauwens v. Goethals*, 187 Ill. App. 563, and we believe that with a little effort Beyler could have made similar proof. Failing to make proof of this character the chancellor was warranted at disallowing any damages other than nominal.

The judgment of the circuit court of Tazewell county is therefore affirmed.

*Judgment affirmed.*